SOVEREIGN CAMP WOODMEN OF THE WORLD *v.* ARTHUR.

Opinion delivered May 17, 1920.

1. INSURANCE—FRATERNAL BENEFIT ASSOCIATION—HAZARDOUS OCCUPATION.—A provision in the constitution of a fraternal benefit association, made a part of the benefit certificate, that if a member engages in any one of certain hazardous occupations mentioned without notifying the clerk and paying certain increased dues he "shall stand suspended and his beneficiary certificate be null and void" is self-executing.

2. INSURANCE — FRATERNAL BENEFIT ASSOCIATION — MEMBERSHIP IN GOOD STANDING.—A provision that a benefit certificate should not be contested when it has been in force for five consecutive years immediately preceding the death while in good standing of the member holding the same has no application to the case of a member who engaged in a hazardous occupation without notice to the clerk and without payment of increased dues, since he was not a member in good standing at his death, and his certificate had not been in force for five consecutive years immediately preceding his death.

3. INSURANCE — HAZARDOUS OCCUPATION — EMPLOYMENT IN MINE.—Under the constitution of a fraternal benefit association requiring, among others, those "employed in mines" to pay increased assessments, as being a hazardous occupation, the word "mine" is used in its primary and restricted sense of an underground excavation for getting out minerals, and does not include open workings, like a bauxite mine.

Appeal from Faulkner Circuit Court; *George W. Clark,* Judge; reversed.

STATEMENT OF FACTS.

Harriet A. Arthur sued the Sovereign Camp Woodmen of the World to recover the sum of $1,000, the amount of a benefit certificate issued upon the life of her son. The certificate was issued to Joe B. Arthur on the 1st day of April, 1913, and his mother, Harriet A. Arthur,

was named as the beneficiary in the policy. Joe B. Arthur died from a gunshot wound inflicted by C. T. Herrick about the 1st of December, 1918. At the time Joe B. Arthur was working in the bauxite mines near Bauxite, Arkansas, and had been working there six or seven months.

W. A. Kinser was a foreman of the mines. According to his testimony, from about July 15, 1918, until the time of his death, Joe B. Arthur worked under him. He was asked how long Joe B. Arthur had worked in the mine and to state fully what work Arthur had been doing. His answer is as follows:

"I have no idea how long he was here, but think it must have been six or seven months. He worked in the open mines. His work caused him to be near and pass by where dynamite was being used, but when blasting was done signals were given so that everybody could get out of the way. He was working in open cut when banks were blasted down. Someone signals and all men leave. He was just simply mining and ditching is all he ever done for me. This work did not include driving and handling of teams, placing of railroad ties and tracks, but only what we call "ditching," which means that we were digging ditches for the drainage of water to pass out of mine."

Continuing we quote from the transcript the following from the deposition of W. A. Kinser:

"Q. State, if you know, in what business the said Joe B. Arthur was engaged at the time he was killed, and, also, state how long previous to the time he was killed, to your knowledge, he had been engaged in said business.

"A. He was engaged in ditching up to the time of his death and had been ditching for a week or ten days. Before this time he was working in the mines."

Another witness testified that Joe B. Arthur did not work in an underground mine, but was engaged in load-

ing cars with bauxite by using a pick and shovel and that his work was on top of the ground.

On cross-examination he testified that they first blow the ore up with dynamite to loosen it and then load it in the cars. They dig down in the ground ten or fifteen feet in places. When a pit is dug they blast the ore out and load it in the cars. He further stated that Arthur dug up some of the ore and that some of it he just shoveled into the cars; that the usual way was to loosen up the ore by blasting and then to shovel it in the cars which were on the track which had been laid in the pit.

The benefit certificate provided that the constitution of the order should be a part of it. Section 42 of the constitution provides that persons engaged in certain classes of business or employment shall not be admitted to membership in the order. Section 43 provides what occupations shall be admitted hazardous and so much thereof as is necessary to the issue raised by the appeal reads as follows:

"Sec. 43. Persons engaged in the following occupations, towit:

"(a) Structural iron workers, circus riders and trapeze performers, conductors and brakemen on railway freight trains, locomotive engineers and firemen, switchmen, hostlers, and other similar railway or steamship employees, excepting agents, office men and those engaged in employment not more hazardous; those employed in mines not otherwise prohibited; sailors on seas, electric linemen, employees in electric current generating plants and enlisted men in the army and navy during war, may be admitted to membership if accepted by the sovereign physician, but their certificate shall not exceed two thousand dollars each and their rate of assessment shall be three dollars and sixty cents per annum for each one thousand dollars of their beneficiary certificate in addition to the regular rate while so engaged in such hazardous occupations.

"(b)   If a member engage in any of the occupations or business mentioned in this section, he shall within thirty days notify the clerk of his camp of such change of occupation, and while so engaged in such occupation shall pay on each monthly installment of assessment thirty cents for each one thousand dollars of his beneficiary certificate in addition to the regular rate.   Any such member failing to notify the clerk and to make such payments as above provided shall stand suspended and his beneficiary certificate be null and void."

Section 68 is the incontestability clause and reads as follows:

"When a beneficiary certificate has been in force for five consecutive years immediately preceding the death, while in good standing, of the member holding the same, the payment thereof shall not be contested on any ground other than that his death was intentionally caused by the beneficiary or beneficiaries, or by the hands of justice, or from the direct result of drinking intoxicating liquors or from the use of opiates, cocaine, chloral or other narcotic or poison, or shall die while engaged in war except in defense of the United States of America or engaged in a hazardous or prohibited occupation."

It appears from the record that the insured had paid his regular dues, but that he did not pay the additional amount required by section 43 of the constitution and did not notify the company of his change of occupation, or that he was working at a bauxite mine.   The company did not have any knowledge that he was working at a bauxite mine until after his death.

The above case was tried before the court sitting as a jury, and the court found in favor of the plaintiff.

From the judgment rendered the defendant has duly prosecuted an appeal to this court.

*T. E. Helm* and *Gardner K. Oliphint*, for appellant.

The insured was engaged in a hazardous occupation exactly covered by the provisions of this contract, and he violated the provisions of his contract by not notifying

the company and by refusing to pay the assessments legally made on him, which rendered his certificate null and void at the time of his death. The case should be reversed and dismissed. The agreements were warranties and the certificate was void under the testimony and the law. The insured did not pay the amount required by section 43 of the constitution of the order and did not notify the company of his change of occupation. 136 Ark. 149; *W. O. W.* v. *Newsom,* 143 Ark. 132; Act 462, Acts 1917.

*R. W. Robins,* for appellee.

1. The certificate had become incontestable under section 68 of the appellant's constitution.

2. Joe B. Arthur was not engaged in mining within the meaning of the constitution of the order. Webster, Dict., p. 1374; Webster, New Internat. Dict., p. 1375; 20 A. & E. Enc. L. (2 ed.) 682-3; 27 Cyc. 53; 18 R. C. L. 1092; Rapalje and Lawrence, Law Dict., vol. 2, p. 821; 35 L. J., ch. 337; 2 B. & A. 65; 3 *Id.* 424; 39 L. R. A. 249-251. Under the law Arthur was not engaged in mining at the time of his death nor at any time prior thereto.

Hart, J. (after stating the facts). It is first sought to uphold the judgment on the ground that the insured was not employed in a mine at the time of his death, and that his policy was not forfeited under section 43 of the constitution which is copied in the statement of facts.

We can not agree with counsel in this contention. The foreman, under whom the insured worked, stated in positive terms that he was engaged in ditching for a week or ten days before he was killed and that before this time he was working in the mines. According to his testimony they were digging ditches for the drainage of water to pass out of the mines.

Another witness testified that the insured had been engaged in digging and loading ore in cars; that the bauxite ore was first loosened by blasting and was then loaded into the cars by the insured and other persons. In this way a pit between ten and fifteen feet deep was

dug in the ground. A track was laid down in it and the insured and others would load the ore into the cars on the track. The cars would then be drawn out of the pit. When the blasts were made the workmen would be notified so that they could get out of the way. It is true the mines were not under the ground, but the undisputed testimony shows that the insured was engaged in working in the mines. A part of his duties was to load the ore in the cars after it had been loosened by blasting so that it could be handled with a shovel. As they proceeded with this work, they would dig down deeper and deeper into the ground so that the pit was from ten to fifteen feet deep. Another part of the insured's duty was to help dig ditches for the purpose of draining the mines. There is no contradiction to this testimony, and it constituted working in the mine, just as much as was the work of the employee who did the blasting. It is contended that the work was not particularly dangerous and that there was no reason to increase the dues of the insured for engaging in that kind of occupation. Be that as it may, the parties had the right to contract with each other and designate working in mines as a hazardous occupation which required notice to the company and an increased payment of dues. The contract does not restrict the clause in question to those engaged in underground mining. The language used is "those employed in mines, not otherwise prohibited," etc.

Clause (b) of the section provides that if the member engages in any of the occupations mentioned in clause (a) of the section, he shall within thirty days notify the clerk of his camp of his change of occupation and shall pay on each monthly installment of assessments thirty cents of each thousand dollars of his beneficiary certificate in addition to the regular rate.

It further provides that any member failing to notify the clerk and to make the payment as provided shall stand suspended and his beneficiary certificate shall be null and void. Thus it will be seen that the section of

the constitution is self-executing. It provides in specific terms that if the member does not comply with the provisions of the section he shall be suspended and his benefit certificate shall be null and void.

As we have already seen, the insured was engaged in working in the bauxite mine at the time he was killed by Herrick, and he had not complied with the provisions of the section of the constitution just referred to. The beneficiary certificate made the constitution a part of the contract of insurance. The Legislature of 1917 passed an act pertaining to the regulation and incorporation of fraternal beneficiary associations. Acts of Ark. 1917, vol. 2, p. 2087.

Under section 8 of the act the certificate, the charter of the company, the constitution and laws of the society and the application for membership and medical examination signed by the applicant constitute the agreement between the society and the members. The society in question is a fraternal benefit association.

In *Acree* v. *Whitley,* 136 Ark. 149, and in *Sovereign Camp Woodmen of the World* v. *Newsom,* 143 Ark. 132, the court held that the insurance certificate of a fraternal society, being an Arkansas contract, is governed by the statute just referred to.

Again, it is contended by counsel for the plaintiff that the judgment of the lower court should be upheld under the incontestability clause of the benefit certificate. We do not agree with counsel in this contention. The clause referred to is section 68 of the constitution. It provides that when a beneficiary certificate has been in force for five consecutive years immediately preceding the death, while in good standing, of the member holding the same, the payment thereof shall not be contested on any ground other than those stated in the section.

It appears from the record that the insured had not made the payments required by section 43 of the constitution when he became employed in the bauxite mines. He did not notify his camp of his change of occupation

and did not pay the additional monthly dues required by the section. The concluding part of the section provides that any such member failing to notify the clerk and to make such payments as above provided shall stand suspended and his beneficiary certificate shall be null and void. Thus it will be seen that the provision is self-executing, and that the benefit certificate was null and void because the member had not complied with the section in the respects just mentioned. Therefore he was not a member in good standing at the time of his death and the certificate had not been in force for five conseuctive years immediately preceding his death. Hence the incontestability clause of the constitution can avail the plaintiff nothing in this case.

It follows that the court erred in finding for the plaintiff, and for that error the judgment will be reversed and the cause remanded for further proceedings according to law and not inconsistent with this opinion.

HART, J. (on rehearing). Counsel for the plaintiff in his brief on rehearing earnestly insists that the words, "those employed in mines not otherwise prohibited," as used in the policy, do not stand alone, but are connected with the context which plainly shows that the parties had in mind those employed in underground mining and not open workings.

Upon reconsideration of the question a majority of the court is of the opinion that counsel is correct in his contention. Insurance policies are written on printed forms specially prepared by experts for the insurance company and the insured has no voice whatever in their preparation; and for these reasons it is well settled that insurance contracts must be construed strictly against the insurer.

Section 42 of the constitution and by-laws of the order specifically designates certain classes of business or employment as prohibited and provides that persons engaged in such occupations shall not be admitted to membership in the order.

Section 43 deals with hazardous occupations. It uses the words, "those employed in mines not otherwise prohibited." The words, "not otherwise prohibited," evidently refer to the prohibited occupations named in section 42. This brings us to a consideration of the meaning of the words, "those employed in mines." As just stated, the company was dealing with hazardous occupations and the context showed what classes of occupations were deemed hazardous by the company. Now there are two meanings to the word "mine." In its primary and restricted sense a mine denotes an underground excavation made for the purpose of getting out minerals. The enlarged meaning of mine is the place where minerals are found and under certain circumstances, it includes minerals obtained by open workings. Lindley on Mines (3 ed.), vol. 1, §§ 88-89. Bauxite is a mineral, but it is mined by open workings. The surface of the earth is cleared off and the bauxite is blasted and is then removed by open workings. Bauxite is mined in precisely the same way that stone or marble is quarried. There is no distinction whatever between the operation of a bauxite mine and the quarrying of stone or marble where the latter is found just beneath the surface of the earth as in the case of bauxite. In such a case the marble or stone is removed by open quarrying or blasting and bauxite is removed in prcisely the same way. If the insurance company had considered bauxite mining to be a hazardous occupation, doubtless it would have also mentioned quarrying. The fact it did not do so, and the further fact that the words, "those employed in mines," are used in connection with structural iron workers, circus riders, trapeze performers, and those engaged in the actual operation of railway trains, employees in electric current generating plants, and enlisted men in the army and navy, show that the words were used in connection with hazardous occupations. This indicates that the company used them in their primary or popular signification

to refer to underground mining and not to open workings.

It follows that the motion for a rehearing should be granted and that the judgment of the trial court should be affirmed. It is so ordered.

SMITH, J., dissents.