(118 So. 749)

**REPUBLIC IRON & STEEL CO. v. BARTER.**
**(6 Div. 101.)**

Supreme Court of Alabama. Nov. 22, 1928.

Percy, Benners & Burr, of Birmingham, for appellant.

Drennen & Burns, of Birmingham, for appellee.

BROWN, J. This is an action of trespass on the case by the appellee against appellant, to recover damages to her estate occasioned by subsidence of the surface resulting from destroying the subjacent supports in conducting mining operations.

The evidence is without dispute, except as to the quantum of the damage suffered, and for the purpose now in hand may be stated to be: That the plaintiff is the owner of the surface and the defendant is the owner of the mineral rights thereunder, with the right to mine and remove the mineral, to use necessary water and timber for mining purposes and for building in connection therewith, and to construct and maintain railroads and tram roads necessary for the mining and transportation of such minerals. The defendant in the past opened a mine under the plaintiff's property, and had mined the coal therefrom, leaving pillars and stumps sufficient for subjacent support of the surface, but for several years past had not operated the mine.

On September 29, 1919, the defendant leased to one W. S. Blackwell "the right to the extent of the Company's interest therein to mine the Pratt coal which is left in *pillars* and *stumps* in the workings and outcrop barriers" on the property in question and providing in the lease:

That the "lessee is to secure from all surface owners written releases relieving the Company from damage claims as a result of mining operation breaking the surface, or cutting of timber, etc., on any land he undermines, such releases to be turned over to the Company." That "the Lessee shall have full charge of and be responsible in every sense for his operation. He shall direct his mining operations with a view to getting all coal practical to be removed from pillars and stumps and use every precaution to protect the Company's properties and equipment furnished him."

The purpose of the lease, as it states on its face, "is to have the lessee to furnish the domestic coal requirements of the Company's employees at Republic," and "for all coal acceptable to the Company furnished on domestic orders the Company agrees to pay the lessor (lessee) the sum of $3.00 per ton. For all coal acceptable to the Company" (other than domestic orders) delivered at designated points, "the company agrees to pay the Lessee $2.30 per ton on the Company's tipple weights," and "for all coal mined and delivered as domestic coal or otherwise, the Lessee agrees to pay the Company a royalty of ten (10¢) cents per ton, such royalty sums to be deducted from balance due and payable to Lessee."

The lease also provides that—

"The lessee shall save the Company harmless against any * * * and pay any claims of any owners of the surface of the land in which the mining is prosecuted growing out of cracking or subsidence of the surface * * * and until such claims are satisfied the Company may withhold payments of sums otherwise due by it to the lessee."

The evidence further shows that Blackwell, operating under this lease, confined his operation to robbing the pillars. Blackwell testified:

The subsidence of the surface "was caused to fall in by taking the coal from under it. The coal was taken out and the rock was not sufficient for the property to hold it. * * *

The taking out of the coal was covered by my contract. My contract did not specify any particular part of coal to take out. I could rob all of it. As a result of my mining this surface fell in. * * * I was just robbing blocks of coal that had been left by the Company. * * * All the portion I mined was pillars. * * * This surface fell in right there. It was caused by our operations. * * * When I took out the pillars it didn't leave sufficient support for the surface."

Appellant's contention on the trial and now is that, on the case as presented, Blackwell, the lessee, and not the lessor, is liable for the damage suffered by the plaintiff.

■ It may be conceded, for the purpose in hand, that as a general rule, where the lease contemplates ordinary mining operations, the lessee and not the lessor is liable for damages resulting from subsidence. Such is the effect of a dictum in Alabama Clay Products Co. v. Black, 215 Ala. 170, 110 So. 151, following a like holding, also dictum, in Kistler v. Thompson, 158 Pa. 139, 27 A. 874; 68 L. R. A. note 695; and as was held in Offerman v. Starr, 2 Pa. 394, 44 Am. Dec. 211.

■ Yet where, as here, the lease contemplates and expressly authorizes the lessee to rob the mine of pillars, and leave the surface without subjacent supports, the lessor as well as the lessee is liable. Little Schuylkell Navigation, R. & Coal Co. v. Tamaqua, 1 Walk. (Pa.) 468; Campbell v. Louisville Coal Mining Co., 39 Colo. 379, 89 P. 767, 10 A. L. R. (N. S.) 822. This on the principle embodied in the maxim, "Sic utere tuo ut alienum non lædes." Williams v. Gibson, 84 Ala. 228, 233, 4 So. 350, 5 Am. St. Rep. 368; Youghiogheny v. Allegheny Nat. Bank, 211 Pa. 319, 60 A. 924, 69 L. R. A. 637.

■ The principle is established by universal authority that the right to subjacent support, unless waived by express stipulation, is absolute, and the owner of the servient estate is liable for its destruction without regard to whether it is destroyed by or through negligence or design, and without negligence. Ala. Clay Products Co. v. Black, supra; West Pratt Coal Co. v. Dorman et al., 161 Ala. 389, 49 So. 849, 23 L. R. A. (N. S.) 850, 135 Am. St. Rep. 127, 18 Ann. Cas. 750; Humphries v. Brogden, 12 Q. B. 739; Youghiogheny v. Allegheny Nat. Bank, supra; Collins v. Gleason Coal Co., 140 Iowa, 114, 115 N. W. 497, 118 N. W. 36, 18 L. R. A. (N. S.) 736; Yandes v. Wright, 66 Ind. 319, 32 Am. Rep. 109; Noonan v. Pardee, 200 Pa. 474, 50 A. 255, 55 L. R. A. 410, 86 Am. St. Rep. 722; Williams v. Hay, 120 Pa. 485, 114 A. 379, 6 Am. St. Rep. 719.

■■ The absolute right of subjacent support—a property right in the plaintiff—imposed on the owner of the servient estate the duty to see to it that the pillars left in the mine during its previous mining operation

were not so weakened as to cause a subsidence of the surface, to plaintiff's hurt. It cannot avoid this duty or liability for a breach thereof by expressly authorizing Blackwell to do that which it could not legally do. The duty here springs out of plaintiff's right and rests upon the owner of the servient estate, for—

"A person causing something to be done, the doing of which casts on him a duty, cannot escape from the responsibility attaching on him of seeing that duty performed by delegating it to a contractor. He may bargain with the contractor that he shall perform the duty and stipulate for an indemnity from him if it is not performed, but he cannot thereby relieve himself from liability to those injured by the failure to perform it." Cabot v. Kingman, 166 Mass. 403, 44 N. E. 344, 33 L. R. A. 45; Montgomery Street Ry. Co. v. Smith, 146 Ala. 316, 39 So. 757.

And this is true, though no control or direction over the work is retained and exercised. Cabot v. Kingman, supra.

Application of these principles clearly demonstrates that the instructions requested and refused were refused without error, and that the instructions given in the oral charge were more favorable to appellant than the case justified.

■ It is now urged that the count of the complaint on which the case was tried is in the alternative, "the first alternative charging that the defendant mined or removed the coal, and the second that the defendant caused the coal to be mined or removed," and "there is no averment to the effect that the defendant had any control or direction or removal of the coal." It is a sufficient answer to this contention that this defect, if defect it is, is not pointed out by the demurrers. Code of 1923, § 9479.

We find nothing in the proceeding of the trial court justifying a reversal of the judgment.

Affirmed.

ANDERSON, C. J., and SAYRE and THOMAS, JJ., concur.