**BUTTE COPPER & ZINC CO. v. POAGUE.**

No. 11633.

Circuit Court of Appeals, Ninth Circuit.

Nov. 10, 1947.

Rehearing Denied Dec. 10, 1947.

W. H. Hoover, R. H. Glover, John V. Dwyer, J. T. Finlen, Jr. and Sam Stephenson, Jr., all of Butte, Mont., for appellant.

H. L. Maury, Al. G. Shone and Earle N. Genzberger, all of Butte, Mont., for appellee.

Before MATHEWS, HEALY and BONE, Circuit Judges.

BONE, Circuit Judge.

This is a diversity of citizenship case tried to a jury. The court denied defendant's motion for a directed verdict, and judgment for the plaintiff was entered on a jury's verdict in her favor. This appeal followed.

In 1910 appellee acquired title to a tract of land in the city of Butte, Montana, together with a dwelling house situated thereon. The deed of conveyance to her contained an exception and reservation of all the ores and minerals beneath the surface which permitted the mining and extraction of these ores and minerals.

Appellant, Butte Copper and Zinc Company (hereafter called Butte) became the owner of the rights to these subsurface ores and minerals and in the year 1917 leased them to the Anaconda Copper Mining Company (hereafter called Anaconda). The latter company thereafter and at all times material to the issue here presented, engaged in mining and extracting the said ores and minerals[1] under authority of this lease agreement.

In this action appellee sought recovery of damages from Butte for injuries to her land and the dwelling house and garage building thereon, alleging a breach by Butte of its duty to furnish subjacent and lateral support in conducting underground mining operations. Her complaint also alleged generally that Butte, by itself and through its agent, servant or partner, Anaconda, had, since 1917, by underground mining operations carried on by them, unlawfully destroyed and impaired the subjacent and lateral support of her property. Her evidence tended to show a subsidence of the surface causing the damage of which she complained. Butte concedes that appellee's property was damaged by reason of underground mining and that some damage in the area where appellee's property is located was first observed about 1941 but asserts that the evidence shows that most of the surface damage in that area occurred within two or three years prior to the trial in the district court. (The trial was held in March and April of 1947.)

Appellee's contentions require a consideration of the terms and conditions of various instruments comprising the said lease agreement between Butte and Anaconda. From them appellee spells out a relationship between these companies which it is claimed makes Anaconda "the agent, servant or partner of Butte." From this premise appellee asserts that legal responsibility rests upon Butte for all of the injuries to her property flowing from the mining operations of Anaconda.

The provisions of the agreement material to the issue here require Anaconda to pay to Butte fifty per cent of the net returns from all ores and minerals mined by Anaconda. Anaconda agrees to continue in possession of the leased property and mine workings therein contained and to install and provide suitable equipment to operate the mine in a good, workmanlike, minerlike and substantial manner. The agreement further provides that "the management of the property hereby leased, and the conduct of all mining operations thereon, shall be vested exclusively in the Mining Company [Anaconda], or such person or representatives as it may designate."

The record before us leaves no doubt that Butte did not engage in working the mine beneath appellee's premises. It is equally clear that at all times here involved, all of said mining operations were carried on by and under the exclusive control and direction of Anaconda. Butte merely leased its mining property to Anaconda for a percentage of the net returns from the ores and minerals extracted. It did not agree to share any losses from such operations and the right to work the mining property and the right to possession thereof, was the right of Anaconda. Management and conduct of all mining operations is "vested exclusively" in Anaconda, and the record is barren of any evidence which

---

[1] From time to time this 1917 lease was extended by the parties, the last extension being made in June of 1940, effective until 1950.

would establish or tend to establish that Anaconda was a "servant" or a partner of Butte[2] in these operations. Any other conclusion would ignore the compelling force of a clear and convincing record.

Appellee points to a provision in the lease agreement which she asserts constitutes a recognition of Butte's liability to the public by reason of the mining operations under her premises. It reads as follows:

" * * * that the Zinc Company, its officers, representatives or agents, shall at all reasonable times have access to and egress from all of the premises of the Zinc Company in the control of the Mining Company hereunder, together with a right to make full inspection and survey of the same, and to obtain at reasonable periods from the Mining Companies copies of working maps showing mining operations conducted in said properties.

"Except as hereinafter provided, the Mining Company assumes as between the parties hereto the responsibility for all claims which may arise in favor of any individual, firm, or corporation for any tort arising out of the operation of the leased premises during the period that such premises are in possession of the Mining Company, or any contract obligations incurred by the Mining Company while controlling said premises, and the Mining Company agrees to indemnify and keep indemnified the Zinc Company, its successors and assigns, against any and all such claims, and at its own cost and expense to defend against such claims and pay the cost of such defense, and any judgment recovered on such claims".

We cannot read into the foregoing provision the creation of a legal liability on Butte of the character sought to be imposed by appellee. Retention of a right by Butte to access and egress from the premises where Anaconda was carrying on its mining operations was inevitable and logical in view of Butte's economic interest in the amount of ore extracted which affected its claim for 50% of the net return. Such a provision does not make the lessor a "director" of the mining operation nor change the character of the lease instrument. A lessor whose remuneration depends on the extent of the output of a leased mine is properly vigilant in seeing to it that its leased assets are not wasted by reckless, unskillful mining, and the employment of an engineer (as is suggested here) to check for a lessor would add nothing to the "liabilities" of the lessor so far as the rights of appellee in this case are involved. See Greek Catholic Congregation, etc. v. Plummer, 338 Pa. 373, 12 A.2d 435, 437, 438, 440, 127 A.L.R. 1008. Likewise insurance against responsibility for tort claims arising out of Anaconda's operations does not of itself impress upon Butte the liability which appellee asserts arises from the relationship created by the lease. For reasons hereafter stated, we reject this view.

From the entire record we are convinced, and so hold, that the mining operations under appellee's premises were carried on by Anaconda in accord with the terms and provisions of the said lease agreement; that said operations were wholly and exclusively within the control and management of Anaconda, and that, under the law and the facts of the case, Butte was not liable for the damages caused by Anaconda's mining operations.

A rule of liability applying to a situation such as is disclosed by the evidence in this case which is supported in reason and by authority, may be generally stated as follows:

The lessor of mining property is not liable for subsidence of the surface caused by mining operations of its lessee (Greek Catholic Congregation v. Plummer, supra; Alabama Clay Products Co. v. Black, 215 Ala. 170, 110 So. 151; Jackson

---

[2] Under Montana law a mining partnership exists " * * * when two or more persons who own or acquire a mining claim for the purpose of working it and extracting minerals therefrom actually engage in working the same." Revised Codes of Montana of 1935, Sec. 8050. Section 8052 of the same Code provides that "a member of a mining partnership shares in the profits and losses thereof in the proportion which the interest or share he owns in the mine bears to the whole partnership capital or whole number of shares."

Hill Coal & Coke Co. v. Bales, 183 Ind. 276, 108 N.E. 962, *unless,* (1) The lessor retains or assumes control over the lessee's operations (Kistler v. Thompson, 158 Pa. 139, 27 A. 874); (2) The lease expressly provides for operations which will cause surface subsidence (Republic Iron & Steel Co. v. Barter, (Ala.) 118 So. 749); (3) The lessor knew or should have known when the lease was made (the last modification and extension of the lease in this case was executed in 1940) that the operations would necessarily cause surface subsidence (Cabot v. Kingman, 166 Mass. 403, 44 N.E. 344, 33 L.R.A. 45); (4) The lessor, with actual knowledge of negligent operations, consented to or ratified them (Campbell v. Louisville Coal Mining Co., 39 Colo. 379, 89 P. 767, 10 L.R.A.,N.S., 822).[3]

Appellant presents eleven specifications of error but it suggests that the first ten should be considered by us as presenting the one legal question as to whether or not there is evidence upon which to predicate the conclusion that Butte (as a lessor) was liable for the mining done by Anaconda which caused the damage to appellee's property.

Measuring the rights of the parties by the rule announced above we conclude that the evidence wholly fails to establish the liability of Butte for the claimed damage suffered as a result of the mining operations of its lessee. Appellee has not brought herself within any exception to this rule of a lessor's non-liability. As we understand her position, she stands squarely on the claim that her right to surface support is an absolute right unless waived, and is one that is not affected, weakened or impaired by any sort of mining lease regardless of its terms, date or mode of execution. There was no evidence of any sort of "waiver" on her part nor was there allegation or proof by her that the mining was negligently done. In fact, appellee disclaims negligence as an issue in the case.

We cannot agree with her contention that the lease agreement here considered failed to contain any provision whatever for the protection of her property by Anaconda. As noted above, the lease agreement required Anaconda, at all times, to carry on its mining work "in a good, workmanlike, minerlike and substantial manner." This and the other provisions of the lease reflect no departure from the usual type of mining leases employed in the Western States, including the provision for the payment of a net royalty on returns from ores and minerals mined by Anaconda.

As indicated, appellee asserts that the right of surface support is absolute unless expressly waived, and that on every grant of minerals there is an implied reservation of surface support—that the question of negligence is not involved. Citing Lindley on Mines, Vol. 3, Secs. 818-819. Butte makes no contention to the contrary but concedes this to be the rule in Montana. It also concedes the right of the surface owner to lateral and subjacent support, as set forth in Catron v. South Butte Mining Co., 9 Cir., 181 F. 941, and in Sec. 6773 of the Revised Codes of Montana of 1935 which Code provision relates to the rights of a coterminous owner to lateral and subjacent support from adjoining lands.

▮ While we must first look to the law of Montana in such a case as this (Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487), we find that the Montana statutes and the Montana decisions cited by counsel—A. M. Holter Hardware Co. v. Western Mortgage & Warranty Title Co., 51 Mont. 94, 149 P. 489, L.R.A. 1915F, 835; Fagan v. Silver, 57 Mont. 427, 188 P. 900; Neyman v. Pincus, 82 Mont. 467, 267 P. 805; Mitchell v. Thomas, 91 Mont. 370, 8 P.2d 639; Ahlquist v. Mulvaney Realty Co., 116 Mont. 6, 152 P.2d 137—are not apposite to the issue here involved.

▮ Butte urges that the demonstrated facts in this case conclusively establish, as a matter of law, that its liabilities and duties in this case must be measured solely by the (lessor's) obligations created under and by the lease agreement, and not by any other yardstick. We agree with this view. To so hold is not to say that under other or wholly different circumstances, a lessor

---

[3] See also 36 American Jurisprudence, Sec. 185, p. 407; 40 Corpus Juris, 1197; Restatement of Torts, Secs. 820 (Par. g), 837 (Par. c).

of mining rights might not be liable for injuries to third persons.

In its instructions the court told the jury that "if the mining of the defendant underneath the surface * * * did disturb the surface (of plaintiff's tract) and injure the buildings thereon, then the defendant is liable for all of the damage to said property proximately caused thereby." The judge frankly advised the jury that he was of the opinion that Butte itself had not done the actual work of mining under plaintiff's premises, but he left the determination of that question to the jury. The jury was further instructed (in substance) that if a preponderance of the evidence convinced the jury that Anaconda did the actual mining work, with the knowledge and consent of Butte, and as its lessee, and such mining operations disturbed and withdrew from the surface of the property of plaintiff the subjacent or lateral support for the said surface, as a direct and proximate result of which the surface subsided and caused injury and damage to the plaintiff's buildings, then the defendant (Butte) was liable for all resulting damages.

Obviously the evidence made plain that Anaconda was doing mining work "with the knowledge and consent" of Butte. The lease agreement and the working of the mine by Anaconda under the terms of the lease, proclaim that to be a fact which Butte would not and does not deny. We are here concerned with the established status of Butte and Anaconda under their lease agreement, a status which in our opinion does not impose upon Butte legal liability for the injuries visited upon the property of appellee. The court's instructions were clearly erroneous in that they did unlawfully impose liability upon Butte for the mining operations carried on by Anaconda under the premises of appellee, all of which operations were carried on under and by virtue of the terms and conditions of the lease agreement between Butte and Anaconda.

Since we are of the view that under the facts in this case appellee is not entitled to recover from appellant, we find it unnecessary to pass upon other contentions raised in the briefs. The judgment of the lower court is reversed.