Benton *v.* U. S. Manganese Corporation.

5-1561                                        313 S. W. 2d 839

Opinion delivered June 9, 1958.

[Rehearing denied July 1, 1958.]

*Hale Brown,* Kirkwood, Mo., and *Charles F. Cole,* for appellant.

*Murphy & Arnold,* for appellee.

Ed. F. McFaddin, Associate Justice. This appeal poses the problem of determining the rights, duties, and liabilities of the owners of the mineral estate as related to the owner of the surface estate. It also requires consideration of the wording in the instrument which separated the full fee estate into the two estates of mineral and surface.

Two tracts of land are involved and each has a separate line of title. In Tract No. 1 (NW¼ SE¼ Sec. 3)

the mineral and surface title were separated by an instrument in *1853* and have never been merged. But no mining has been done on Tract No. 1 and it is not shown that any will be done. Since this is not a suit for declaratory judgment but a suit for injunction, we dismiss Tract No. 1 from this litigation, but without prejudice to any proceeding should mining be attempted on it.

In Tract No. 2 (NE¼ SE¼ Sec. 3 and East Half of Lot 1 of NW¼, Sec. 3) there was a united fee title until October 17, 1927, when George Tenney conveyed the minerals[1] to American Manganese Company, and the deed was duly recorded. The mineral interests of the American Manganese Company passed by mesne conveyances to the appellee, U. S. Manganese Corporation, which acquired title in 1956. Tenney continued to own the surface estate from 1927 to 1948 when he conveyed the surface estate to appellant, Clarence O. Benton,[2] by deed which described the conveyed property as:

"The agriculture or surface right to the East Half of Lot One (E½) of the Northwest Quarter (NW¼) of Section Three, . . . and the Northeast Quarter (NE¼) of the Southeast Quarter (SE¼) of Section Three . . ."

[1] The following is the language in the conveyance: "Grant, bargain, sell and quit-claim unto the said American Manganese Company and unto its successors and assigns forever, all minerals of any and every kind, mineral rights and mining rights, together with the right to mine, excavate and prospect for minerals and ore, to use and build necessary roads, tram roads, to use water, and with full power of ingress and egress on, over and across said lands for said purposes . . . And grantors herein, their heirs and assigns, hereby agree as part of the consideration of this conveyance to hold Grantee, its successors and assigns harmless from liability on account of accident or death to stock of any kind, which might be injured by falling into pits, excavations, etc., on said lands made by grantees or its assigns in mining and prospecting on said property, and further agree that grantor, or his assigns, shall pay all taxes assessed against said property in which he owns the surface rights, so long as the surface and mineral rights remain unsevered on the tax books, and shall not permit same to become delinquent for non-payment of taxes . . ."

[2] The appellants are Clarence O. Benton, Mrs. Lanelle Benton, his wife, and Mrs. W. C. Benton, his mother. Agricultural and surface rights to Tract No. 2 are owned by Clarence O. Benton. His mother owns with him the agricultural and surface rights in Tract No. 1. We speak of the appellants as "Benton" since Clarence O. Benton is the active party.

Sometime in 1956 the appellee, U. S. Manganese Corporation, as the owner of the minerals, undertook to remove the manganese deposits from the lands last described. It was thoroughly established that such removal could be done only by open pit mining, or strip mining: that is, the removal of the topsoil to a depth of about 20 or 25 feet by bulldozer or other soil moving machinery, and then the removal of the manganese throughout the entire vein. The result of such operations was to put a tremendous overburden on part of the land and to leave deep holes or trenches in the mined portion of the land. Furthermore, appellee will, later, take the overburden soil to some washing plant to fully retrieve any particles of manganese therein. The practical result of all of these operations is to leave the surface owner with only a "hole in the ground" for his agricultural purposes.

In 1956, when mining commenced on the lands in Tract No. 2, appellee entered into an agreement with Clarence O. Benton whereby he had charge of the bulldozing operations and the removal of the manganese; and for such work, Benton received a stated sum per ton for the manganese ore removed from the lands. The amount that Benton received was deemed sufficient by him to justify the destruction of his surface, so no complaint was registered. Eventually the appellee decided to make other arrangements for its operations, and dispensed with Benton's services. Thereupon, Benton took steps to prevent the appellee and its employees from entering upon the said lands. Then, appellee filed this suit to enjoin Benton from interfering with appellee's entry on the lands for the purpose of mining operations. Benton defended the injunction suit by claiming that the complete destruction of the surface estate by the appellee's operations would constitute an illegal invasion of the agricultural or surface rights. Trial resulted in a decree permanently enjoining Benton et al. from interfering with the appellee's mining operations; and this appeal ensued.

We thus have for consideration the relative rights, duties, and liabilities of the owner of the mineral estate

as related to the owner of the surface estate, and the consideration of the wording which divided the full fee estate into the two estates of mineral and surface. It was contemplated by the conveyance of the mineral estate (the words of conveyance being heretofore copied) that the owner of the mineral estate would have "the right to mine, excavate, and prospect for minerals and ore," and that the owner of the surface estate would keep the owner of the mineral estate harmless "from liability on account of accident or death to stock of any kind, which might be injured by falling into pits, excavations, etc., on said lands made by grantees or its assigns in mining and prospecting on said property, . . ." Thus it is clear that the opening of pits was contemplated by the conveyance of the minerals and the owner of the surface estate took with notice of such conveyance.

We entertain no doubt that the owner of the mineral estate has the right to dig pits for the removal of the minerals. But, here, the digging of the pits results in the *complete destruction* of the surface, and the *removal of the surface* to washing plants leaves the surface owner with nothing but a "hole in the ground" for his agricultural pursuits. The question is whether the owner of the mineral estate is liable for damages for such complete destruction of the surface.

The Court was correct in enjoining the owner of the surface estate from interfering with the owner of the mineral estate; but the Court should have retained jurisdiction to assess the damages which the owner of the surface estate should recover for such complete destruction of the surface estate. In *Carson* v. *Mo. Pac. RR. Co.,* 212 Ark. 963, 209 S. W. 2d 97, 1 A. L. R. 2d 784, we were concerned with the mining of bauxite; and Justice ROBINS, speaking for this Court, said:

"Generally, the operation of mining bauxite is not a subterranean one, but is accomplished by digging of open pits. *Sovereign Camp Woodmen of the World* v. *Arthur,* 144 Ark. 114, 222 S. W. 729. Manifestly, such an operation would destroy the value of the land for farming purposes, or any other purpose. To give the

contract between appellant and the railroad company the construction asked by appellee we must hold that Carson and the railroad company entered into a contract in 1892, by which the railroad company would have had the right (assuming that the bauxite was to be removed by the open pit method), the day after Carson paid for his farm home, to enter upon it and utterly destroy its value without liability upon the part of the railroad company for damages. Such a construction, under the situation of the parties shown here, would be an extremely unreasonable one. A reservation as broad as the grant is ordinarily void. 26 C. J. S. Deeds, p. 447, § 139.''

In the case at bar, to deprive the appellants — the owners of the surface estate — of any right for damages for the complete destruction of the surface would be to make the conveyance of the surface as a mere nullity. In *Western Coal & Mining Co.* v. *Young,* 188 Ark. 191, 65 S. W. 2d 1074, the mining had been done by subterranean tunnels and pillars of coal had been left to support the surface. Later the mineral owner removed the pillars of coal and the surface subsided. The surface owner brought suit for damages which were recovered in the lower Court. In affirming the recovery for damages, this Court said:

''Appellant also contends for a reversal of the judgments because, under the lease from Denning, it had the right to mine and remove the coal without reference to damage it might do to the surface of the lands above. It is true the lease placed no restrictions upon it with reference to damaging the surface in mining and moving the coal thereunder, and it is also true, as suggested by learned counsel for appellant, that there is no statute in this State requiring the owner of coal interests in lands to leave pillars to support the surface; but, notwithstanding, we are of the opinion that the only true and sound rule is that 'when the surface of land is owned by one person and the minerals beneath are owned by another, the owner of the minerals cannot remove them without leaving sufficient natural or artificial support to sustain the surface.' Such was the rule announced in

the case of *Western Indiana Coal Co.* v. *Brown,* 36 Ind. App. 44, 74 N. E. 1027, 114 Am. St. Rep. 367. See also *Williams* v. *Hay,* 120 Pa. 485, 14 Atl. 379, 6 Am. St. Rep. 719; *Noonan* v. *Pardee,* 200 Pa. 474, 50 Atl. 255, 55 L. R. A. 410, 86 Am. St. Rep. 722; *West Pratt Coal Co.* v. *Dorman,* 161 Ala. 289, 49 So. 849, 23 L. R. A. (N. S.) 805, 135 Am. St. Rep. 127, 18 Ann. Cas. 750, and cases therein cited: *Kistler* v. *Thompson,* 158 Pa. 139, 27 Atl. 874; *Earnest* v. *Corona Coal Company,* 212 Ala. 303, 102 So. 445; 1 R. C. L. 395.''

While the Western Mining case was not a case of open pit mining,[3] it was nevertheless a case of damage caused by *destruction* of the surface and points to the reason for our present holding. The Western Mining case prevents us from following the Kentucky cases like *Buchanan* v. *Watson,* 290 S. W. 2d 40, and the Pennsylvania cases like *Commonwealth* v. *Fisher,* 72 Atl. 2d 568. In defending against the injunction, Benton filed a cross-complaint for damage to the land, alleging that the ''estate in said lands will be entirely destroyed and of no value.'' The prayer of the complaint was ''for all other relief.'' We hold that the Trial Court was correct in granting the injunction to prevent Benton from interfering with the appellee in mining the lands; but we hold that the cause should be remanded to the Trial Court in order to assess and award damages to Benton for the complete destruction of the surface shown in this case. It is so ordered.

[3] Open pit mining is discussed in 36 Am. Jur., "Mines and Minerals" § 174 *et seq.*