## JOHN H. FREEZER AND WILLIAM B. WRIGHT, APPELLANTS, *v.* ELIZA SWEENEY, RESPONDENT.

CIVIL PRACTICE— *Jury— Notes of stenographer.* — After having been charged, and having retired to consider their verdict, a jury, at its own request, was brought back into the court-room and permitted to hear read the testimony of two witnesses who had testified, from the stenographer's notes. This practice was objected to as improper, and also on the further ground that the testimony as read was secondary, and therefore inadmissible, if the witnesses themselves could have been produced. *Held,* that there was no error under section 267, division 1, Compiled Statutes ; that under said section the court had no authority to permit the examination of witnesses at such a time; and that the notes taken by an official stenographer on a trial are presumably correct.

MINES AND MINERALS— *Placer locations— What may be located —Stone quarries— Surplusage in notice of location— Title— Minerals in a placer claim.*— In a notice of location filed pursuant to section 1477, division 5, Compiled Statutes, the claim was described as a "placer mining or stone quarry claim," and in the application for a patent filed in the United States land office only as a "placer mining claim." *Held,* that under section 2329, United States Revised Statutes, placer locations may include all forms of deposit excepting quartz veins or other rock in place, and that the land department of the United States government has properly held that said section embraces quarries of rock valuable for building purposes. *Held, also,* that neither the laws of the United States nor those of the Territory require the owner of a placer claim to designate the particular use or character of the same when he applies for a patent, and that if a record notice of such a location contains unnecessary words of description, they may be treated as surplusage in an application for a patent. *Held, also,* that if a claim located as a placer is such as is contemplated by section 2329, United States Revised Statutes, the owner is entitled to all the mineral deposits contained therein, except veins or lodes of quartz as described in section 2320, United States Revised Statutes.

*Appeal from the First Judicial District, Lewis and Clarke County.*

The opinion states the case.

*Shober & Adams,* for Appellants.

The defendant's notice of location read "placer mining or stone quarry claim," and the trial court erred in holding that such a notice was for a placer mining claim and admitting it in evidence. The words "placer mining claim," or the words "placer claim," has a well-defined meaning, and is construed to mean " *deposits* of the *precious metals,* not in place." This term has never been applied to other than *gold deposits.* (See American Mining Law, pp. 42–44 inclusive, and authorities there cited; *Moxon* v. *Wilkinson,* 2 Mont. 421.) This was an action commenced under section 2326, Revised Statutes of the United States, to determine the right of possession to the land in dispute as a placer mining claim. Defendant's application was to enter said premises as a placer mining claim, not as a stone quarry. It was not an application to enter a stone quarry, plaintiffs adversed, but an application to enter said premises as a placer mining claim. The defendant had no right to enter said premises as a placer mining claim under such notice of location. The court erred in instructing the jury that " defendant's location is a good location for a rock quarry, " so that in legal effect the notice will read a placer mining, to wit, " a rock quarry claim." No such words as "rock quarry" anywhere appear by notice of location or application for patent on part of defendant. The words " rock quarry" were nowhere used by plaintiffs in notice of location or application for patent. The words " rock quarry," as used in the instructions, are strictly creations of the court and outside of any legitimate issue connected with the case, and well calculated to mislead the jury. The appellants conceive that the entire case was tried upon an erroneous basis. There could not, legitimately, under the pleadings, be any question as to the mineral character of the premises in controversy. If defendant had claimed any portion of the premises in question as a quarry or rock in place, then her location would have been wholly defective. Rock in place would necessarily have to be taken up under the same rules and regulations as a quartz lode mining claim. (Rev. Stats. U. S. §§ 2319–2329.)

*Comly & Foote,* for Respondent.

It is evident that both appellants and defendant intended to

locate placer claims, and they each invoked the authority of the United States for so doing, and claim under the laws thereof. The only difference between them is that the appellants claim generally under the general name of *placer*, and the respondent designates particularly the *kind* of *placer* claimed, to wit, "stone quarry claim." It is evident that counsel for appellants have confused a quarry of building stone with a quartz lode, when in truth and in fact the commissioner of the general land office, the secretary of the interior, and the decisions of the courts, hold that a quarry of building stone is a *placer claim.* In *Moxon* v. *Wilkinson*, 2 Mont. 424, the court says: "In the language of miners, a lode is a *vein* containing *ore.*" In construing section 2320, Revised Statutes, United States, in the case of *North Noonday Mining Co.* v. *Orient Mining Co.* 6 Sayw. 308, the court defines a vein or lode. (See, also, *Foote* v. *Nat. Min. Co.* 2 Mont. 402; *Overman Min. Co.* v. *Corcoran*, 15 Nev. 152.) The United States land department holds that veins of clay or non-metaliferous substances are subject to location as *placers.* (See *Montague* v. *Dobbs*, 9 Copp's Land Owner, p. 165.) It has also decided in mineral application of H. P. Bennett, that land chiefly valuable for building stone, used as a quarry, may be entered as a *placer* claim. (See 3 Decisions Public Lands, p. 116.) By United States Revised Statutes all deposits not classed as *veins* of rock in place are considered placers. (*Vide* Glossary, p. 147, Copp's U. S. Min. Lands.) The United States have three kinds of mineral lands for sale — coal at ten dollars to twenty dollars per acre; veins or lodes at five dollars per acre; and placers at two dollars and fifty cents per acre — and it is purely within the province of the executive jurisdiction of the department of the interior by proper regulation to determine under what class mineral applications shall be made. (§ 2478, U. S. Rev. Stats.) The use of the words "rock quarry" in the instructions of the court, is based upon the fact that in the respondent's notice of location the words "stone quarry" are used, and the court in the instructions wrote the expression "rock quarry," using the synonym of *stone.*

DE WOLFE, J. — This was an action to determine the right of possession of a mining claim, brought in pursu-

ance of section 2326 of the Revised Statutes of the United States.

The plaintiffs claim the right of possession to the premises by a location thereof as a placer claim, on the 14th of May, 1887; the defendant claims possession by a location thereof, made by herself and Thomas Purcell, on the 23d of March, 1886, and a subsequent conveyance by Purcell and his wife to defendant of their interest in said mine

In the location made by Purcell and defendant, the claim is described as a "placer mining or stone quarry claim." The defendant subsequently filed her application in the local land office in Helena for a patent to the claim, describing it as a "placer mining claim." The plaintiffs filed an adverse claim to the application, and thereafter instituted suit, within the statutory time, to determine the right of possession to the disputed premises.

A trial by jury was had in the District Court, and special questions of fact submitted to them, on all of which, as also in their general verdict, the jury found in favor of the defendant, and a judgment and decree were entered accordingly — and a motion for a new trial being made was overruled. To review these proceedings this appeal is prosecuted.

Several exceptions were taken by the appellants during the trial, to the rulings of the court in the admission of evidence, and to the instructions given and refused. Such of these as are deemed of importance we will proceed to consider.

The first we will notice is found on page 74 of the record, in which the court, against the objections of the plaintiffs, at the request of the jury, permitted the evidence of the witnesses, Purcell and Decker, to be read to the jury from the reporter's notes, after the jury had been charged by the court and had retired to consider as to their verdict. This is alleged as error.

Section 266 of the Code of Civil Procedure prescribes what papers may be taken by a jury, upon retiring for deliberation; and this section expressly excludes depositions from being taken. But the next section provides "after the jury have retired for deliberation, if there be a disagreement between them as to any part of the testimony, or if they desire to be informed on any question of law arising in the cause, they may require the officer

to conduct them into court. Upon being brought into court, the information required shall be given in presence of, or after notice to, the parties or counsel." (Code Civ. Proc. § 267.)

This section seems to contemplate the course of proceeding followed by the court. But it is further objected that the testimony, as read from the stenographer's notes, was secondary and therefore inadmissible if the witnesses themselves could have been produced. To this it may be replied that the stenographer is a sworn officer of the court, and the notes taken by him of the evidence is presumed to be correct until it is shown to be otherwise. This was not done or attempted, and hence the evidence as read from the notes is presumed to have been the statements made by the witnesses.

In addition to this it may be said that the court, under the statute, has no authority to reopen the case by recalling witnesses and admitting new or additional testimony. It is where the jury differ as to the testimony already given that the court is authorized to give the information asked; and that information is, as said, presumed to be in the notes of the stenographer. The information asked and given must be of testimony already given, and not new testimony or statements of witnesses given for the first time. (*Russell* v. *Dennison*, 45 Cal. 338.)

The plaintiffs requested the court to give to the jury twenty-three separate instructions, which the court refused; and to this refusal exceptions were taken.

Space does not admit of a separate examination of these instructions. It is believed that a more intelligent examination can be given them by a discussion of the general propositions to which they relate, than by an attempt to pronounce upon them separately. The substance, at least, of some of these instructions was given by the court to the jury; thus, the first instruction by the court is identical in principle, though not in form, with the first instruction asked by plaintiffs and refused by the court. Most of the instructions refused relate to the validity or sufficiency of the location of the premises by defendant or her grantor as a "placer mining or stone quarry claim," and whether, under such a designation and description of the claim, she could apply for a patent for the premises as a "placer claim." In other words, whether the defendant and her co-locator, having in their

recorded notice of location designated the claim as a "placer mining or stone quarry claim," are not limited and restricted in their rights to the stone quarry found within the claim, without acquiring a right to the placer or other mineral deposits found therein.

The question is an interesting one, and we have not been referred to, nor have we found any direct adjudication on the subject; but the commissioner of the land office, in the case of *Montague* v. *Dobbs* (9 Copp's Land Owner, p. 165), and also is the application made for a patent by P. H. Bennett, reported in volume 3, Public Land Laws, page 116, held that land containing layers or deposits of kaoline, and quarries of stone valuable for building purposes, could be located as placer claims under the provisions of section 2329 of the Revised Statutes of the United States. That section is as follows: "Claims usually called placers, including all forms of deposit excepting veins of quartz or other rock in place, shall be subject to entry and patent under like circumstances and conditions and upon similar proceedings, as are provided for vein or lode claims; but when the lands have been previously surveyed by the United States, the entry, in its exterior limits, shall conform to the legal subdivisions of the public lands."

This section extends and enlarges the signification commonly given to "placer claims," and makes such locations include all forms of deposit, excepting quartz veins or other rock in place. The officers of the land department have construed it as embracing quarries of rock valuable for building purposes, as already stated, and we do not doubt the correctness of this construction.

It is not presumable that the government of the United States intended to deprive its citizens of the use of, or means of acquiring title to something so necessary and indispensable as rock or stone is for building purposes, and if the land in which rock or stone quarries are found cannot be taken up under the provisions of the section mentioned, no provision of the land laws is known under which title to such deposits can be acquired, when they are found outside lands valuable for minerals (strictly speaking) or outside agricultural lands, title to which can be acquired under the pre-emption and homestead laws.

Congress, in 1878, passed an act for the acquisition of title to

timber lands and lands valuable for stone, but, by its terms, it is made applicable only to the States of California, Oregon, and Nevada.

Holding, then, that the premises in controversy could be located, and thereafter patented, as a placer claim under the provisions of the mining law of the United States, the next question that arises in the case is whether the defendant and her co-locator, having located the claim as a "placer mining or stone quarry claim," are restricted and limited by the terms of the location as to the stone quarry found within the claim, or are entitled to all mineral deposits found therein; and also in applying for a patent for the claim, wherein it was described as a "placer claim," without reference to the terms of the location as a "stone quarry," whether this was a misdescription that deprived her of any rights.

Section 2329 of the Revised Statutes of the United States (it will be observed) contains no requirement as to the particular nature or character of any location authorized under that section, but groups them all under the general appellation of "placer claims"; nor does that or any other section of the mining law of Congress require a record of a placer claim; a record is made necessary only by the territorial law, and that law (Gen. Laws, 5th div. § 1477) requires placer claims, including building stone and other forms of deposit, to be filed for record within twenty days after location, and the record to contain a description of the same in the manner prescribed by the laws of the United States. The laws of the United States make no requirements concerning a record of a placer claim as it does respecting locations upon veins or lodes. ( Rev. Stats. U. S. § 2324.) Nor does the law require any staking or marking of the boundaries of a placer claim as it does in the location of a lode claim; but the placer claim, when made on surveyed lands, must conform to the legal subdivisions of such surveys. (See Rev. Stats. U. S. § 2329); and a reference to such legal subdivision is sufficient in a record notice of location.

The record of the locations of the claim in controversy by both plaintiffs and defendant appears to have been in conformity with the requirements of the statute, and the location notices were, therefore, properly admitted in evidence. Nor is there

any requirement under the laws of the United States, or of this Territory (if it be assumed that the Territory could make any law on the subject), which requires the owner of a placer claim, whatever be its character, when he makes application for a pat-, ent, to designate the particular use or character of the placer claim, provided it is such as is contemplated by section 2329, above referred to.  It is sufficient to designate it as a placer claim without any description as to kind or quality, and if the record of location contain words of description defining the use or purpose for which it was located, such words in no way abridge the rights of the owner, but should be treated as surplusage in any application for a patent.

If it is a placer claim, the owner is entitled to all the mineral deposits contained therein, excepting only veins or lodes of quartz, such as are described in section 2320, Revised Statutes, United States.

Applying these principles to the case now under consideration, the defendant, with another, located the claim in dispute on the 23d of March, 1886, and filed in the recorder's office of the proper county, a notice of location, on the 7th of April, 1886, being within the twenty days required by law.  This location was more than a year prior to the location made by plaintiffs, and no abandonment or forfeiture being alleged or shown on the part of the defendant, we must hold as we do, that the defendant had the right to the possession of the claim in dispute; that the instructions given by the court to the jury were in the main correct, and if erroneous, they stated the law more favorably for the plaintiffs in one or two respects than they should have done; that the plaintiffs were not prejudiced thereby, and that the general verdict of the jury and judgment and decree based thereon were correct, and should therefore be affirmed.

*Judgment affirmed.*

BACH, J., and LIDDELL, J., concur.