[No. 720.  Decided February 8, 1893.]

LEE W. WHEELER AND L. H. WHEELER AND THE PUGET SOUND LIME COMPANY, AS INTERVENOR, *Respondents,* v. EDWARD S. SMITH, *Appellant.*

PUBLIC LANDS — STONE DEPOSIT — LOCATION AS MINING CLAIM —
SCHOOL SECTIONS — WHEN ENTRY VOID.

Lands chiefly valuable for stone, and upon which no mineral deposits exist, are not locatable under the acts of congress, either as lode or placer mining claims.

Under the act of congress reserving sections sixteen and thirty-six in each township in Washington Territory for the purpose of being applied to its common schools, and the enabling act, making a present grant of such sections to the state to take effect as soon as the state should be organized, an entry made upon such school sections subsequent to their survey and to the approval of said enabling act, is void, whether entered under the timber and stone act or under the mining laws.

*Appeal from Superior Court, San Juan County.*

*Greene & Turner,* for appellant.

*Jenner, Legg & Williams,* and *Tustin, Gearin & Crews,* for respondents.

The opinion of the court was delivered by

STILES, J.—Edward S. Smith, the defendant, in 1884, located a lode mining claim upon ground situated at the southeast corner of section 36, in township 37 north, range 3 west, and at the southwest corner of section 31, in township 37 north, range 2 west, under the provisions of the mining laws of the United States. Subsequently, and in the same year, he took the necessary steps to obtain a patent to the land described in his claim. But, upon reaching the general land office, it was ascertained, in September, 1886, when his application came to be examined there, that the deputy mineral surveyor, in writing up his field notes of his survey, had located the claim in ranges 1 and 2 west, instead of 2 and 3 west, and for that reason the commissioner of the general land office peremptorily ordered a cancellation of the entry, and upon appeal to the secretary of the interior, that officer, in 1888, modified the order of the commissioner in these words:

"Under these circumstances, and inasmuch as the mistake in description was a clerical error, the entryman should be allowed to make entry for the land he claims upon showing that he has given proper new notices and furnished a new plat and field notes properly describing the land."

Upon the receipt of this modified order at the Seattle land office, the claimant, Smith, caused new papers to be prepared, and had taken the steps which the statute requires in the way of notice to the public, when the plaintiffs filed an adverse claim in the land office, and in pursuance thereof commenced this action.

At the threshold of the case we will say that, although the disposition we find it necessary to make of it would not absolutely require a decision of the point, yet it is our view that under no such circumstances should the claimant have been put to the trouble and expense of entirely new proceedings to entitle him to a patent in case his claim had

45—5 WASH.

been approved. The error made was not his error, but that of a deputy mineral surveyor of the United States, whom he was by law compelled to employ to make the survey. There seems to have been no possible reason why the mistake made by the deputy should not have been discovered in the surveyor general's office, and there corrected, before the plats and field notes were delivered to the claimant for filing in the land office and posting on the claim. The land upon which this claim was located was a part of Orcas Island, over which the public surveys had been extended. The description of the location notice showed that it was situated on the west shore of the island, and that the initial point was but three hundred feet from the waters of President's Channel, which was a fixed and prominent natural object or land mark, so that the slightest reference to the township plats would have shown the error made by the deputy. The notices posted and published clearly showed what the location actually was upon the ground, and there was no reason why these could not have been accepted and the correction made in the land office without any further proceedings. *Duryea v. Boucher*, 67 Cal. 141; *Metcalf v. Prescott*, 10 Mont. 283 (25 Pac. Rep. 1037). Under ordinary circumstances, therefore, we should hold that the plaintiffs' claim, initiated nearly five years after the completion of the necessary proceedings in the land office, ought not to be entertained in a suit waged in pursuance of the filing of an adverse claim under Rev. St. U. S., § 2326. But this is not an ordinary mining claim, and its disposition depends upon other matters.

The location of the original claim was called the "Orcas Island Lime Mine," and it was said to be located "along the course of this lead, lode or vein of *mineral bearing quartz.*" The other steps taken before application for patent were in accordance with the United States statutes governing the disposition of mineral lands. The plaintiffs

Wheeler located over the same land two claims, which they called placer mining claims. Their notices were to the effect that they had discovered, located and taken possession of a certain deposit of limestone, situated on portions of section 36, in township 37 north, range 3 west, and section 31, township 37 north, range 2 west, in San Juan county, Washington.

The main contest between the parties was as to whether the land included within these claims was locatable as a lode mining claim, or as placer mining claims. The evidence shows, and it is not disputed, that along the line between sections 36 and 31 there was a large deposit of limestone, which, as one of the expert witnesses in the case described it, had been pushed up through the mass of the country rock by some convulsion of nature in the form of what might be commonly termed a ledge of rock. It was entirely devoid of ore. Plaintiffs maintain that because of the absence of ore it was locatable under the mining laws as a placer mine, although, in fact, it was what is termed, in mining parlance, "rock in place." There are several valid reasons why we must hold both parties in error, and that no valid location could be made of such land under the mineral laws, and that, therefore, neither party is entitled to a judgment in his favor.

1. The mineral land laws of the United States were enacted for the purpose of securing to miners upon the public lands the title to *mineral* discovered by them, and a sufficient quantity of the land in which mineral is discovered as will enable them to prosecute the work of development and production successfully. Mines, as known to those laws, embrace nothing but deposits of valuable mineral ores, and do not include mere masses of non-mineralized rock, whether rock in place or scattered about through the soil. On this point both sides appeal with confidence to the case of the *United States v. Iron Silver Mining Company*, 128

U. S. 673 (9 Sup. Ct. Rep. 195), in which case, on page 679, the court tersely defined the two classes of claims as follows:

"By the term 'placer claim,' as here used, is meant ground within defined boundaries which contains *mineral* in its earth, sand or gravel; ground that includes valuable deposits not in place, that is, not fixed in rock, but which are in a loose state, and may in most cases be collected by washing or amalgamation without milling. By 'veins or lodes,' as here used, are meant lines or aggregations of *metal* embedded in quartz or other rock in place. The terms are found together in the statutes, and both are intended to indicate the presence of metal in rock."

Each party maintains that the language used which is favorable to the other side was *dictum* of the court, but whether it be *dictum* or not, the substance of the language constitutes a concise definition of placer and lode claims as derived from innumerable decisions of the courts of the United States and of the mining states and territories. In our judgment a mining claim, whether lode or placer, is not established or entitled to be patented under the mineral laws of the United States unless it contains some of the metals for which mining works are prosecuted.

In this connection we are not unmindful of the fact that several decisions of the land office and of the interior department have been promulgated, which hold that limestone lands may be patented as mineral claims, but as we view these decisions they are such strained constructions of the mineral laws as are unwarranted by their terms and by the spirit and intent of their enactment. The case of *Freezer v. Sweeney*, 8 Mont. 508 (21 Pac. Rep. 20), is also cited in support of the proposition that a rock quarry can be located as a placer claim, and that case expressly so holds. The argument there is, that because the term "valuable deposits" is used in § 2320, and "all forms of deposit" in § 2329; therefore, inasmuch as limestone is a deposit, it

must embrace quarries of rock valuable for building pur-
poses.   But in so deciding we think the court entirely
overlooked the fact that the mining laws were intended to
embrace only deposits of ore, and that the very term
"mineral" excludes the idea of any non-mineralized de-
posit.   Another consideration which seems to have weighed
with the Montana supreme court was, that unless rock quar-
ries could be embraced within the description of placer min-
ing claims, there was no law of the United States under
which lands embracing such deposits could be acquired by
citizens.    What this court said in *Johnston v. Harrington,*
*ante,* p. 73, concerning stone taken from public lands, re-
ferred to the policy of the government in permitting stone as
well as other far more valuable "minerals" to be devoted
to private use, in the absence of positive prohibitory stat-
utes.   But no title to the land in which even the most
precious of minerals were found was ever permitted to pass
to the miner until the mining laws of 1866 were enacted.
*Johnston v. Harrington* upheld the title to the stone when
severed, but had nothing to do with the land from which
it was quarried, except by way of argument and illustra-
tion.   This last consideration leads to the next point, viz.:

2.  Whatever may be the construction placed upon the
mining laws elsewhere, it is more than doubtful if it would
have any application in the State of Washington.   The act
of congress of June 3, 1878 (20 U. S. St. at Large, 89),
commonly known as the timber and stone act, provided for
the sale of land chiefly valuable for stone, in Washington,
Oregon, California and Nevada.   The proviso to the first
section of that act is as follows:

"*Provided,* That nothing herein contained shall defeat
or impair any *bona fide* claim under any law of the United
States, or authorize the sale of any mining claim, or the
improvements of any *bona fide* settler, or lands containing
gold, silver, cinnabar, copper or coal, or lands selected by
the said states under any law of the United States donating

lands for internal improvements, education or other purposes.''

By the second section the claimant was required to make oath that the land sought to be obtained was chiefly valuable for stone; that it was uninhabited; that it contained no mining or other improvements excepting for ditch or canal purposes, where any did exist, excepting such as were made by or belong to the applicant; nor any valuable deposit of gold, silver, cinnabar, copper or coal; that the applicant under that act did not apply to purchase the same on speculation, but in good faith to appropriate it to his own exclusive use and benefit; and that he had not directly or indirectly made any contract or agreement with any person whatever whereby the title which he might acquire from the United States should inure in whole or in part to the benefit of any person excepting himself. These provisions are entirely inconsistent with the idea that such lands as are chiefly valuable for stone could be taken up under any mining law.

It has always been recognized as the rule that in grants of land by the government to the states for educational or other purposes, those which contained any known mineral deposits are excepted from the same. Yet this act shows that congress supposed stone lands to be selectable by the states, and debars the taking up of deposits of stone in any land selected by them; and the affidavit required is substantially the usual affidavit which is required to be made by all entrymen of agricultural lands, to the effect that the land is non-mineral, and is not sought to be entered for speculation.

3. There is still another ground for objection to a part of these entries, even under the timber and stone act, viz.: One of the sections upon which this stone is found is section 36, and it appears that at all times when these parties were attempting to locate their claims the lands were sur-

veyed.    The act of March 2, 1853 (10 U. S. St. at Large, 172), entitled ''An act to establish the territorial government of Washington Territory,'' provided as follows :

''SEC. 20. And be it further enacted, that when the lands in said territory shall be surveyed under the direction of the government of the United States, preparatory to bringing the same into market or otherwise disposing thereof, sections numbered sixteen and thirty-six in each township in said territory shall be and the same are hereby reserved for the purpose of being applied to common schools in said territory.''

This section had been followed up by section 10 of the enabling act, approved February 22, 1889, before the plaintiffs' placer locations were made, making a present grant of sections sixteen and thirty-six to the state, to take effect as soon as the state was organized.    This third point was not suggested by counsel on either side, but in view of the interest of the state in these lands we deem ourselves justifiable in adducing it as one of the reasons why these claims should not be sustained.

The judgment of the superior court will be reversed, and the case remanded with instructions to enter a new judgment, decreeing neither party to be entitled to the possession of the lands in question, respondents to pay costs both in the superior court and in this court.

DUNBAR, C. J., and SCOTT, ANDERS and HOYT, JJ., concur.