PARKER GRAVEL CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 88348.    Promulgated October 15, 1930.

*John J. Finnorn, Esq.*, for the petitioner.
*A. S. Lisenby, Esq.*, for the respondent.

OPINION.

TRAMMELL: The deficiency involved in this proceeding results from the action of the respondent in disallowing certain deductions claimed by the petitioner in its return as follows: (1) A deduction for depletion of a gravel deposit or pit, based on discovery values, in the amount of $5,124.79; (2) in part, a deduction for depreciation in the amount of $3,367.84; and (3) a deduction for "organization expenses" in the amount of $433.96. The petitioner alleges that the respondent's action constitutes error. The issue of depletion will be first considered.

The statute applicable here is the Revenue Act of 1926, which provides in pertinent part as follows:

SEC. 234. (a) In computing the net income of a corporation * * * there shall be allowed as deductions:

\*      \*      \*      \*      \*      \*      \*

(8) In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case; * * * In the case of leases, the deductions allowed by this paragraph shall be equitably apportioned between the lessor and lessee.

SEC. 204. (c) The basis upon which depletion, exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be the same as is provided in subdivision (a) or (b) for the purpose of determining the gain or loss upon the sale or other disposition of such property, except that—

(1) In the case of mines discovered by the taxpayer after February 28, 1913, the basis for depletion shall be the fair market value of the property at the date of discovery or within thirty days thereafter, if such mine were not acquired as the result of purchase of a proven tract or lease, and if the fair market value of the property is materially disproportionate to the cost. The depletion allowance based on discovery value provided in this paragraph shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property upon which the discovery was made, except that in no case shall the depletion allowance be less than it would be if computed without reference to discovery value. Discoveries shall include minerals in commercial quantities contained within a vein or deposit discovered in an existing mine or mining tract by the taxpayer after February 28, 1913, if the vein or deposit thus discovered was not merely the uninterrupted extension of a continuing commercial vein or deposit already known to exist, and if the discovered minerals are of sufficient value and quantity that they could be separately mined and marketed at a profit.

(2) In the case of oil and gas wells the allowance for depletion shall be 27½ per centum of the gross income from the property during the taxable year. Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property, except that in no case shall the depletion allowance be less than it would be if computed without reference to this paragraph.

The petitioner here contends that it is entitled to a deduction for depletion of its gravel pit based on discovery value, while the respondent asserts that a gravel pit is not a " mine " within the meaning of that term as used in the taxing statute, and hence does not come within the purview of the provisions above quoted.

If the petitioner is to prevail in its contention, the term " mines " as used in the statute must be construed to comprehend a gravel pit. What, then, is the meaning of this term as it is used in the Revenue Act of 1926, *supra?*

At the outset it will be noted that the statute provides generally in section 234 (a) (8) for a reasonable allowance for depletion in the case of (1) " mines," (2) oil and gas wells, (3) other natural deposits and (4) timber. It is apparent Congress did not intend the word " mines " as used in this section to embrace oil and gas wells, or other natural deposits, since these are separately specified, nor would it, of course, include timber.

That the word " mines " is used in this statute not in its broadest significance, but in a restricted sense, is still more apparent from a reading of section 204 (c), where it is provided in subdivision (1) that the basis for depletion " in the case of mines," with certain restrictions, shall be the fair market value of the property at the date of discovery or within thirty days thereafter, and in subdivision (2) special provision is made for depletion " in the case of oil and gas wells."

In its primary and restricted sense, the word " mine " denotes an underground excavation made for the purpose of getting minerals. *Sovereign Camp Woodmen of the World* v. *Arthur*, 222 S. W. 729; *People* v. *Bell*, 86 N. E. 593; *Northern Pacific Ry. Co.* v. *Mjelde*, 137 Pac. 386, 389; *Kreps* v. *Brady*, 133 Pac. 216, 220; *Barton* v. *Wichita River Oil Co.*, 187 S. W. 1043.

A mineral is any substance not of the animal or vegetable kingdom and, therefore, the word " mines " in its broadest significance would include " oil and gas wells " and " other natural deposits." Yet, as we have just shown, it is apparent from a reading of the taxing statute that the term is not there used in that sense.

In *Marvel* v. *Merritt*, 116 U. S. 11, the court, referring to mines and minerals, says:

The words used are not technical, either as having a special sense by commercial usage or as having a scientific meaning different from their popular meaning. They are the words of common speech, and as such their interpretation is within the judicial knowledge, and therefore matter of law.

Again, it has been said that the word " mineral " is a word of general language which, in the scientific division of matter, includes every substance not of the animal or vegetable kingdom, and its usage may not, therefore, be determined by the ordinary definitions

of the dictionaries in given cases, but its meaning must be derived from the intention with which it is used in a particular instrument or statute. *Northern Pacific R. R. Co.* v. *Soderberg*, 188 U. S. 526; *Dingess* v. *Huntington, etc., Co.*, 271 Fed. 864.

Since it is at once apparent that in the Revenue Act Congress did not use the word "mines" in its broadest sense, what, then, is the judicial interpretation of the term when used in a restricted sense?

In *Wheeler* v. *Smith*, 32 Pac. 784, the court states that the word "mines," as that term is known to the mineral laws of the United States, "embraces nothing but deposits of valuable mineral ores, and does not include mere masses of non-mineralized rock, whether rock in place or scattered about through the soil."

Ordinarily, the extraction of oil or gas from the earth is not spoken of as mining, nor is an oil or gas well a mine in the primary and restricted sense of the word. *Hollingsworth* v. *Berry*, 192 Pac. 763; *Guffey Petroleum Co.* v. *Murrel*, 53 So. 705; *Carter* v. *Phillips*, 212 Pac. 747.

In its broadest sense, as belonging to one of the three great divisions of matter, viz., animal, vegetable, and mineral, gravel, like oil and gas, may be considered to be a mineral, but in its restricted sense it is not a mineral. *Hendler* v. *Lehigh Valley R. R. Co.*, 58 Atl. 486; *United States* v. *Aitken*, 25 Philippine 7, 14; *Sult* v. *Oil Co.*, 61 S. E. 307.

In *United States* v. *Aitken, supra*, the Government sought to eject the appellees from a parcel of land located by them under the mining laws as a placer mining claim, valuable for the gravel it contained. The issue involved was whether the material which induced the appellees to apply for a patent was susceptible of location under the mining laws relating to the occupation and purchase of public lands containing valuable "mineral" deposits. Thus, the specific question before the court was whether gravel was a "mineral." The court in its opinion said:

It is true that commercial gravel belongs to the mineral kingdom in that it is inorganic and that it is formed by nature alone. But there is an important distinction between it and any of the so-called minerals as recognized by the authorities. Practically speaking, all the definitions of the word "mineral" agree that such a substance must always have a definite chemical composition by which it can be easily recognized, in whatever part of the earth it may be found. There can be no such uniformity in the chemical content of gravel deposits, for the reason that this depends entirely upon the character of the mineral deposits which have contributed to their formation. And upon the character, quantity, and proximity of the minerals to the gravel deposit, their susceptibility to erosion, the violence with which the erosion is accompanied, the duration of the eroding process, as well as various other facts, depends the size of the pebbles and the quality of the deposit as commercial gravel. There is nothing constant in the character of commercial gravel by which to identify it

as a mineral, except that it consists of broken fragments of rock mingled with finer material, such as sand and clay. Nothing definite can be said of its chemical composition as can be said of the minerals. Commercial gravel is simply a jumbled mass of fragments of various minerals (rocks). Science, at least, cannot accept as a distinct subdivision of the mineral kingdom any substance whose character and attributes are so composite and fluctuating. It is true that beds of sandstone and limestone may possibly owe their origin in some instances to deposits of ordinary gravel. (Barringer and Adams on The Laws of Mines and Mining in the United States; Enc. Brit., 11th ed. Title " Gravel.") But commercial gravel has not yet reached that stage. So far as scientific classification goes, then, commercial gravel can not be considered as a mineral.

\* \* . \* \* \* \* \*

But it is clear that it can not be legitimately considered as a mineral in any scientific sense of the word, because it has been persistently ignored in all the treatises on mineralogy and kindred subjects. And to hold that the term " mineral " as used in the Act of July 1, 1902, includes commercial gravel, it would seem necessary to conclude that Congress intended to include within it a substance which, despite its frequency and the variety of uses to which it was put at the time of the passage of the Act, had never been considered as coming within the term by any recognized authority. \* \* \*

In *Zimmerman* v. *Brunson* (39 L. D. 310, 1911), the United States Land Department was called upon to decide for the first time whether commercial gravel could be located as a placer mineral claim. In that case it was said:

" Conceding that the twenty acres are chiefly valuable for gravel and sand, which can be used in connection with cement forming concrete, used in the construction of buildings, does such a deposit confer upon them a mineral character so as to except them from homestead entry? \* \* \* "

A search of the standard American authorities has failed to disclose a single one which classifies a deposit such as claimed in this case as mineral, nor is the Department aware of any application to purchase such a deposit under the mining laws. This, taken into consideration with the further fact that deposits of sand and gravel occur with considerable frequency in the public domain, points rather to a general understanding that such deposits, unless they possess a peculiar property or characteristic giving them special value, were not to be regarded as mineral.

The Revenue Act of 1926, *supra*, provides generally for the allowance of reasonable deductions for depletion in the case of " mines, oil and gas wells, other natural deposits and timber," and it is axiomatic to say that no kind of property may be the subject matter of an allowance for depletion which does not fairly come within one of these four classifications. *Inclusio unius est exclusio alterius.* In addition to this general provision, the statute provides a specific basis for computing depletion in the case of " oil and gas wells," and also contains a special provision for depletion on the basis of discovery value only in the case of " mines."

It is apparent, we think, that Congress no more intended the word " mines " as used in this statute to include " other natural deposits " than it was intended to include oil and gas wells or timber. We can not assume that Congress was engaged in idle expression when it employed the words " oil and gas wells " and " other natural deposits "

in association with the word " mines," and in order to give meaning to all of the words used, it is obvious that the word " mines " must be read in its restricted sense as including only what is generally included under the word " minerals."

If it be held that the word " mines " is here used in its broad sense to embrace a gravel pit, it must be held that gravel in the same sense is a " mineral." We would then be unable to attach any significance to the words " other natural deposits " used in the statute, since any natural deposit is within the broad meaning of the word a " mineral " and an excavation to recover such mineral is a " mine." Water, in the broad sense of the word, is a mineral, and a well in that sense might then be called a " mine," but certainly the word " mine " is not generally so understood. If such a construction be given to the statute, not only would the words " other natural deposits " have no meaning or effect, but a direct conflict in terms would result, for the reason that there could be no natural deposits other than mines.

If Congress had intended such meaning, the statute could easily have been framed to read: " mines, including oil and gas wells, and other natural deposits," but we can not supply what has been thus omitted. It is our conclusion, therefore, that a gravel pit or deposit is not embraced within the term " mines " as used in the sections of the Revenue Act of 1926, above quoted. The allowance for depletion based upon discovery value being authorized only in the case of mines, such a deduction is as effectively prohibited in the case of property not coming within that classification as if the statute specifically so stated. Here again we apply the maxim, *inclusio unius est exclusio alterius.*

From what we have said above, it follows that the petitioner is not entitled, under section 204 (c) (1), *supra*, to a deduction for depletion of its gravel pit based upon discovery value. The respondent's determination on this issue is approved.

We may point out, however, that, on the state of the record before us we would be compelled to deny allowance of the deduction claimed by the petitioner for depletion on other grounds also. The statute authorizes the depletion allowance only in the case of mines " discovered by the taxpayer." The gravel pit here in question, even if it should be conceded to be a " mine," was discovered by Parker and Morgan apparently some time during the months of January, February, or March, 1925. We are unable to determine from the evidence the exact date of the discovery. At any rate, active operation of the property was commenced on or about March 20, 1925, after which date production was continuous, and the taxpayer corporation was not organized until May 4, 1925. In the light of

these facts, it is our opinion that the *taxpayer* did not discover the gravel deposit, and is therefore not entitled to a depletion allowance based on discovery value. *Evangeline Gravel Co.*, 13 B. T. A. 101, 104. See also *Melville G. Thompson*, 10 B. T. A. 25.

The statute further provides that in the case of mines discovered by the taxpayer, the basis for depletion shall be " the fair market value of the property at the date of discovery or within thirty days thereafter." The record not only fails to show that the gravel pit involved here was discovered by the taxpayer, but it fails to establish definitely the date of the discovery, and wholly fails to establish " the fair market value of the property at the date of discovery or within thirty days thereafter." Some testimony was offered to prove the amount of profit per cubic yard which it was anticipated could be realized from the excavation and sale of gravel and other material from the petitioner's pit. But such testimony alone affords no sound basis for determining the fair market value of the property at date of discovery or within thirty days thereafter, even if discovered by the taxpayer, nor was any effort made otherwise to establish such value. See *Charles Warner Co.*, 8 B. T. A. 1112.

And, lastly, the petitioner failed to prove the amount of its production for the taxable year, and even if the requirements of the statute had been met and the other essential factors proved, we would be unable to determine the amount of the deduction for depletion to which the petitioner would be entitled, and on this ground alone would be compelled to deny the relief sought. *Robert Roberts*, 20 B. T. A. 345.

On the second issue, involving the deduction claimed by the petitioner for depreciation, the evidence is more definite and satisfactory. The depreciable assets consisted of (1) railroad spur, (2) locomotive, (3) steam shovel, (4) dredge, (5) grading equipment, and (6) light plant. The parties are in disagreement only with respect to the rates to be applied, and as to the last item, the light plant, each has used an annual rate of 10 per cent.

In reference to the railroad spur, the evidence is insufficient to enable us to determine the probable period of useful life, and hence the rate fixed by the respondent will not be disturbed. There was testimony that the rails had a useful life of approximately 10 years from date of acquisition, but this is not sufficient to justify us in holding that the railroad spur as a whole, consisting not only of the rails but also of fittings, crossties, grade and probably other parts, had a useful life other than the period of 20 years determined by the respondent.

The petitioner in its return claimed depreciation on a locomotive at the rate of 10 per cent; the respondent allowed 5. There is some

testimony to show that the period of useful life may have been between 5 and 7 years, but it is not, in our opinion, of a quality to convince us that this period should be adopted. From all of the evidence we conclude that the petitioner has established the reasonableness of the rate of 10 per cent originally claimed, but no more; and this is sufficient to prove that the respondent's rate of 5 per cent is inadequate.

On the steam shovel, dredge, and grading equipment, the testimony establishes periods of useful life of approximately five years each, and as to these items we have fixed the rate at 20 per cent. In recomputing the deficiency a deduction for depreciation will be allowed in the amount of $3,441.27, as set out in our findings of fact, above.

The third issue involves a question of the deductibility of various expenditures which were mistakenly claimed in the return to be "organization expenses." The evidence now enables a proper designation of these expenditures. An amount of $194.63, expenses incident to the organization of the petitioner, is not deductible from income. *Hershey Manufacturing Co.*, 14 B. T. A. 867, 877, and cases there cited. An amount of $122 paid for engineering services in ascertaining the extent and character of the gravel deposits is, in our opinion, a capital expenditure. Cf. *C. M. Nusbaum*, 10 B. T. A. 664. The amounts of $13 and $104.33 expended for various items are ordinary and necessary business expenses properly deductible from income.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

TRUSSELL and SEAWELL dissent.