Anna C. Troup v. Commissioner.
Troup v. Commissioner
Docket No. 33113.
United States Tax Court
1953 Tax Ct. Memo LEXIS 337; 12 T.C.M. (CCH) 262; T.C.M. (RIA) 53082; March 13, 1953
*337 Petitioner sought a deduction for depletion on discovery value basis under Sections 23 (m) and 114 (b) (2), Internal Revenue Code. Held, petitioner failed to establish (1) the definite date of discovery, (2) the fair market value on date of discovery or within thirty days thereafter, and (3) facts required for computation of depletion. Linwood Connellee, Esq., 615 Main Street, Ottawa, Ill., for the petitioner. Paul Levin, Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: This proceeding *338 involves a deficiency in income tax in the amount of $857.01 asserted by the respondent for the fiscal year ended June 30, 1947. The issue is whether petitioner is entitled to any allowance for depletion of certain limestone deposits based upon discovery value. Findings of Fact Petitioner is an individual residing in Ottawa, Illinois. She filed her income tax return for the fiscal year ended June 30, 1947 with the collector of internal revenue for the first district of Illinois. Petitioner is the owner of a tract of land located in LaSalle County, Illinois, described as follows: "The South 70.29 acres of that part of the Northeast Quarter (N.E. 1/4) of Section Eighteen (18) lying East of the Fox River, Township Thirty-five (35) North, Range Five (5) East of the Third Principal Meridian, LaSalle County, Illinois." She acquired this property through inheritance from her father, who died in December 1911, and received a deed therefor on October 17, 1912. The appraisal value of the land at that time was $120.00 per acre. There is no evidence as to what factors were taken into consideration by the appraisers in arriving at such value. On April 15, 1941 petitioner and her husband *339 entered into an agreement with H. M. Nash with respect to said property, which reads in part as follows: * * *
"WHEREAS, the parties of the first part believe that said described premises have thereon a deposit of limestone suitable and accessible for commercial purposes; and "WHEREAS, the party of the second part desires to make tests, soundings and borings on said premises to ascertain the location, kind and quality of any such deposit and to mine, remove and market it in case he finds that a deposit of limestone exist thereon suitable and accessible for commercial purposes; "NOW, THEREFORE, in consideration of One ($1.00) Dollar, paid by the party of the second part to the parties of the first part, receipt of which is here-by acknowledged, and of the covenants and agreements herein contained, it is agreed that the party of the second part may between the time of the execution of this agreement and the 1st day of June, A.D. 1941, go upon said premises and make tests, soundings and borings thereon for the purpose of determining the location, amount, kind and character of any deposit of limestone which may be thereon; * * *
"In case the party of the second part shall *340 find and determine that the deposit of limestone on said farm is, in his judgment, suitable and accessible for commercial purposes, then he shall have the privilege and option until June 15, 1941, of having a lease thereon from the parties of the first part for a term of twenty (20) years, beginning on the 1st day of July, A.D. 1941. Notice of the acceptance of the option shall be given by the party of the second part (hereinafter referred to as the 'lessee') to the parties of the first part (hereinafter referred to as the 'lessors'), in writing, either in person or by mail. If the lessee shall exercise his option and privilege, then the terms and conditions of the lease between the parties shall be as follows: "1. The lessee shall have the right to go upon said premises, or any part thereof, and mine, excavate and remove deposits of limestone, sand or gravel therefrom; "2. The lessee shall pay to the lessors as rental for said premises a royalty of ten (10") cents per ton for all limestone, and seven (7") cents per cubic yard for all sand or gravel mined, removed and sold by him from the deposit on said premises, providing, however, that the lessee shall pay a minimum rental of *341 Two hundred ($200.00) Dollars per year for each year during the term of this lease, payable in annual installments on the first day of each lease year of this lease. Such minimum rental shall be considered to be an advance payment of royalty and the lessee shall have credit therefor as a payment of royalty upon all limestone, sand or gravel mined and removed from said premises. * * *
"12. The said lessors, their representatives or assigns, shall have and hereby reserve the right to farm so much of said premises as will not reasonably be used by said lessee in the mining of limestone, sand or gravel from said premises, after allowing unto said lessee under this lease sufficient area for extension of his mining operations during each farming rental year; and said lessee shall fence from time to time the area to be used by him in such mining operations during each farming rental year, the fencing to be of such construction as to confine and keep from pit or quarry of lessee livestock of the cattle kind, at the expense of said lessee." On November 5, 1943 L. D. Hopper and J. P. Babcock, partners doing business as Ottawa Mining Company, as assignees of H. M. Nash, cancelled and *342 surrendered all rights under the aforesaid lease. On the same date petitioner and her husband executed a new lease to Howard Holler and Edwin Seitz for the purpose of mining, removing, and marketing limestone, sand, or gravel from said property. This lease provided for the payment to lessors as rental "a royalty of ten (10") cents per ton for all limestone, and seven (7") cents per cub yard, for all sand or gravel mined, removed and sold by them from the deposits or stock pile on said premises", with a minimum rental of $200 per year, and further provided: "The royalty payable each year on limestone, sand or gravel, shall be subject to adjustment by way of increase or decrease, according to market conditions for such limestone, sand or gravel, and such adjustment shall be made on the basis of ten (10) per cent of the normal selling price of such materials at the mine or pit current for such year at said pit and other pits in the vicinity of the counties of LaSalle, Livingston, Grundy and Kendall, in the State of Illinois." By supplemental agreement entered into on January 1, 1947 the terms or conditions for payment of royalty were amended as follows: "* * * to provide for the *343 payment of royalty to said parties of the first part by said parties of the second part of Ten Cents (10") per ton for all limestone mined, removed and marketed and said parties of the second part shall not be liable for the payment of Ten Per Cent (10%) of the normal selling price of said limestone at the mine or pit, as provided in the Third Clause of said original agreement so long as the selling price of said limestone does not exceed the sum of One and 25/100ths ($1.25) Dollars per ton; "It is further agreed by and between the parties hereto that in the event the selling price of such limestone at the mine or pit shall exceed the sum of One and 25/100ths ($1.25) Dollars, per ton, then, and in such event, said parties of the second part shall immediately thereupon again become liable for the payment of royalty at the rate of Ten Per Cent (10%) of the selling price of such limestone, as provided for in the Third Clause of said original agreement and this Supplemental Agreement shall immediately thereupon become null and void and of no further force and effect; "It is further agreed by and between the parties hereto that this agreement shall apply only to the royalty on limestone *344 mined, removed, and marketed; all of the other terms and provisions of the original agreement, heretofore entered into by and between the parties, so assigned, as aforesaid, shall remain in full force and effect, without change or alteration;" Limestone suitable for agricultural purposes was extracted from petitioner's property through removal of the overburden, consisting of three or four feet of soil and an open pit excavation. The limestone quarry was first placed in production on May 1, 1942. Petitioner received her first royalty check in the amount of $163.10, based on 10" per ton, on June 16, 1942. The presence of limestone deposits in the general territory including petitioner's property was recorded in Illinois Geological Surveys as early as 1868. Limestone deposits had been opened and quarried and some inferior lime burned. Several kilns used for the burning of lime were on the property north of petitioner's, and one kiln was located on petitioner's property. Prior to the operation of the limestone quarry involved herein petitioner had obtained limestone for use on her farm land from Pontiac and LaSalle, a distance of from 40 to 45 miles from this property. The respondent, *345 in his notice of deficiency, disallowed a deduction for depletion in the amount of $2,734.68, and explained his action as follows: "It is held that the limestone quarry located on your land is not a "mine" and deduction for depletion thereof may not be based on discovery value. Furthermore, no evidence of discovery or the fair market value at the basic date has been presented on which depletion deductions, based on discovery value, may be considered." Petitioner assigned this action as error. Opinion The primary issue in this proceeding is whether or not petitioner is entitled to discovery value depletion as provided in Section 23 (m) and (n) and Section 114(b)(2) of the Internal Revenue Code. Section 23 (m)[1] provides that in computing net income, in the case of mines, there shall be allowed as a deduction, a reasonable allowance for depletion, such reasonable allowance to be made under rules and regulations to be prescribed by the Commissioner, with the approval of the Secretary. Section 23 (n)[2] provides that the basis upon which depletion is to be allowed shall be as provided in section 114. *346 Section 114 (b) (2), as of the pertinent date (Revenue Act of 1938), provided: "(2) DISCOVERY VALUE IN CASE OF MINES. - In the case of mines (other than metal, coal, or sulphur mines) discovered by the taxpayer after February 28, 1913, the basis for depletion shall be the fair market value of the property at the date of discovery or within thirty days thereafter, if such mines were not acquired as the result of purchase of a proven tract or lease, and if the fair market value of the property is materially disproportionate to the cost. The depletion allowance under section 23(m) based on discovery value provided in this paragraph shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property upon which the discovery was made, except that in no case shall the depletion allowance under section 23(m) be less than it would be if computed without reference to discovery value. Discoveries shall include minerals in commercial quantities contained within a vein or deposit discovered in an existing mine or mining tract by the taxpayer after February 28, 1913, if the vein or deposit thus discovered was not merely the uninterrupted *347 extension of a continuing commercial vein or deposit already known to exist, and if the discovered minerals are of sufficient value and quantity that they could be separately mined and marketed at a profit." Respondent has conceded that a limestone quarry is a mine within the ambit of section 114 (b) (2). Arrel v. Gentsch, 52 Fed. Supp. 635; Smith v. United States, - Fed. Supp. - (D.C.Iowa, June 24, 1952). The remaining questions necessary for determination of the applicability of section 114 (b) (2) are (1) was there a discovery after February 28, 1913, (2) the date of such discovery, (3) the fair market value of the property at the date of discovery or within thirty days thereafter, (4) whether such fair market value is disproportionate to the cost, and (5) other facts necessary for the computation of depletion. See Reg. 111, Sec. 29.23 (m), particularly subsections 1, 3, 7 and 14. The burden rests upon petitioner to show that she is entitled to the deduction claimed. Reinecke v. Spalding, 280 U.S. 227; Robert Roberts, 20 B.T.A. 345; Parker Gravel Co., 21 B.T.A. 51; Dunn & Baker, Inc., 30 B.T.A. 663, affd. per *348 curiam 70 Fed. (2d) 1010. Respondent contends that none of the factors listed above as essential to establish petitioner's entitlement to an allowance for depletion based on discovery value have been shown. We think the evidence was sufficient to show that there was a discovery within the purview of the statute. While it is true that State Geological Surveys indicated the presence of limestone deposits in the general territory in which petitioner's farm is located they did not show the quality or the quantity of such deposits on petitioner's property with sufficient definiteness to enable one to determine without further investigation that such deposits were commercially operatable. On the contrary they indicated an inferior grade of limestone of variable thicknesses. Nor was the existence of an old abandoned lime kiln on petitioner's property without further evidence of the quality of limestone burned therein or where it was obtained, and if obtained from petitioner's property, or for that matter if obtained from adjoining property, that it existed in quantity and quality which would justify operation, sufficient to refute petitioner's claim of discovery. These facts *349 were not disclosed until the drillings or excavations performed by petitioner's lessee. As to all the other factors listed above we think respondent must be sustained in his contentions. There was no evidence establishing the date of discovery other than that it took place between April 15, 1941, the date of the lease to Nash, and May 1, 1942, when the limestone quarry was first placed in production. In Parker Gravel Co., 21 B.T.A. 51, 59-60, it was held that the discovery of a gravel pit (even if it should be conceded to be a "mine") between January 13, 1925, the date of the lease therein, and March 20, 1925, when active operation of the property was commenced, failed to establish definitely the date of discovery and "wholly fails to establish 'the fair market value of the property at the date of discovery or within thirty days thereafter'". The failure of petitioner to produce evidence definitely establishing the date of discovery and consequently "the fair market value of the property at the date of discovery or within thirty days thereafter", is of itself sufficient to sustain respondent's disallowance of the claim for depletion based on discovery value herein. Assuming, *350 however, for purposes of argument that the date of discovery had been definitely established, the record is wholly lacking in evidence from which the fair market value of the property at the date of discovery or within thirty days thereafter could be established or that such fair market value was disproportionate to the cost. The only evidence of values contained in the record consisted of the appraisal value or cost to petitioner of the property in 1912. Petitioner received a check for $163.10 on June 16, 1942, representing royalty at ten (10") cents per ton for limestone produced and sold in May 1942. From the statement accompanying the notice of deficiency attached to the petition we learn that petitioner claimed a deduction for depletion during the fiscal year 1947 in the amount of $2,734.68, and in his opening statement counsel for respondent stated "Petitioner reported that her income from the limestone quarry was $5,757.23 and took depletion in the amount of $2,878.61, leaving a net from the limestone quarry of $2,878.62." No other evidence of the amount of limestone produced and sold or of the royalty received by petitioner during this or any other year was offered. From the *351 opening statement of respondent, plus an assertion in the opening statement for petitioner that "a depletion allowance of one-fourth of a cent per ton was recommended by the government based upon an estimated value of $175.00 per acre as of 1913", and the ten (10") cents per ton royalty provided by the lease, we are asked to estimate the total tonnage of recoverable limestone contained in petitioner's tract and the fair market value thereof on the date of discovery. We are unable to do so. Petitioner's opening statement is of course of no evidentiary value. Nor was there any showing as to how much of the income received by petitioner during the taxable year was based on royalty at ten (10") cents per ton or ten per cent of of the normal selling price of limestone, or how much was received for sand and gravel. There was no evidence whatever as to the thickness of the limestone strata underlying petitioner's property, nor of the area covered by such deposits and consequently no estimates nor basis upon which estimates could be made as to the number of tons of limestone contained in petitioner's property. As held by us in Dunn & Baker, supra, quoted with approval in Clarence P. Sidwell, 11 T.C. 826: *352 "* * * But even assuming a determinable content and a fixed price, the multiplication of the two figures does not give fair market value. Reinecke v. Spalding, 280 U.S. 227." On the evidence presented we are unable to make any finding whatever as to the fair market value of the mine or quarry at the time of discovery or within thirty days thereafter, or that the fair market value is disproportionate to the cost. Cf. Clarence P. Sidwell, supra; Dunn & Baker, Inc., supra; Charles Warner Co., 8 B.T.A. 1112. Moreover, petitioner has not shown facts necessary for the computation of depletion for the taxable year. Section 29.23 (m)-3 of Regulations 111 provides in part as follows: "With respect to any property for which discovery value is the taxpayer's basis for depletion, the depletion for any taxable year shall be computed by (1) adding to the discovery value of the mineral deposit in the property any subsequent allowable capital additions made by the taxpayer, (2) subtracting the aggregate of depletion deductions with respect to the property which would previously have been allowable to the taxpayer without the application of *353 any net income limitation, (3) dividing the remainder by the number of units of mineral remaining as of the taxable year, and (4) multiplying the depletion unit, thus determined, by the number of units of mineral sold within the taxable year." In failing to submit evidence establishing the discovery value of the limestone deposit in the property, the depletion deductions which would previously have been allowable without the application of any net income limitation, the number of units of limestone remaining as of the taxable year, and the number of units of limestone sold within the taxable year, petitioner has failed to prove facts necessary for the computation of depletion. Petitioner having failed to prove material facts necessary to establish her entitlement to depletion based on discovery value, as well as material facts upon which a computation of depletion could be made, we hold that respondent did not err in his determination. Decision will be entered for respondent. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * *
(m) DEPLETION. - In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under rules and regulations to be prescribed by the Commissioner, with the approval of the Secretary. In any case in which it is ascertained as a result of operations or of development work that the recoverable units are greater or less than the prior estimate thereof, then such prior estimate (but not the basis for depletion) shall be revised and the allowance under this subsection for subsequent taxable years shall be based upon such revised estimate. In the case of leases the deductions shall be equitably apportioned between the lessor and lessee. In the case of property held by one person for life with remainder to another person, the deduction shall be computed as if the life tenant were the absolute owner of the property and shall be allowed to the life tenant. In the case of property held in trust the allowable deduction shall be apportioned between the income beneficiaries and the trustee in accordance with the pertinent provisions of the instrument creating the trust, or, in the absence of such provisions, on the basis of the trust income allocable to each. For percentage depletion allowable under this subsection, see section 114(b), (3) and (4)↩. 2. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * *
(n) BASIS FOR DEPRECIATION AND DEPLETION. - The basis upon which depletion, exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be as provided in Section 114↩.